

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

F.# 2022R00805
AFM:LRO/ANR

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 4, 2026

By ECF

The Honorable Nina R. Morrison
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   United States v. Lu et al.
>        Criminal Docket No. 23-316 (NRM)

Dear Judge Morrison:

The government respectfully submits this letter in response to the defendant's May 1, 2026 submission, which again seeks to exclude evidence of the taskings the defendant received concerning Victim-1 and Victim-2. See ECF No. 106 ("Def. Ltr.") at 3-5.[1] For the reasons set forth below, and in the government's prior filings, the defendant's motion should be denied and the evidence should be admitted.

As an initial matter, the defendant's letter once again seeks to distance himself from this conduct—characterizing it as "evidence concerning CC-1"[2]—and fails to accurately characterize the defendant's own involvement. See Def. Ltr. at 3; see also ECF No. 89 at 5 (defendant's motion in limine, characterizing the proof as "bad acts by third parties"). For the avoidance of doubt, the taskings pertaining to Victim-1 and Victim-2—which were recovered from the defendant's cell phone—were directed exclusively to the defendant, in one-on-one

---

[1]   The government's May 2, 2026 filing, see ECF No. 108, responds to the first portion of the defendant's submission, which incorrectly asserts that 18 U.S.C. § 951 is "not violated by assisting foreign officials in personal matters." See Def. Ltr. at 1-3.

[2]   The person referenced as CC-1 in the defendant's submission is not the same person referenced as "CC-1" in the Superseding Indictment. However, for ease of reference, this letter uses the same terms used in the defendant's letter.

conversations between the defendant and CC-1.  In other words, the taskings squarely implicate the defendant himself.

On their face, it is clear that these taskings—contrary to the defendant's suggestion—are *not* innocuous inquiries or "commonplace" requests for "help with a lawsuit." See Def. Ltr. at 3.  For instance, with respect to Victim-1, the tasking provides Victim-1's passport number and states that Victim-1 was "banned from leaving the country [China]"; that Victim-1 had "fled to the United States"; that "[a] case had been opened against [Victim-1] in China"; that Victim-1 had "used illegal means" to travel to the United States, through an intermediary country, "with his own Green Card"; and that the defendant should find a way to "deport" Victim-1 "back to China."  See GX 342 at 2.  Similarly, with respect to Victim-2, CC-1 asked whether the defendant knew Victim-2, referencing Victim-2's hometown in China.  In response, the defendant advised CC-1 that there are "several" individuals with Victim-2's name, and that CC-1 should "ask about the age" and "[t]hen I can find out."  See id. at 4.  Later that day, CC-1 sent the defendant a photograph, taken surreptitiously, of Victim-2 seated on a park bench, along with Victim-2's date of birth and current address.  See id. at 5. CC-1 further advised that Victim-2 "has a lawsuit against [CC-1's] friend," and asked the defendant to "find someone . . . who has a good relationship with [Victim-2]"—preferably someone who CC-1 also "know[s] well."  See id. at 7.

Far from an exercise in "stereotyping" as the defendant suggests, see Def. Ltr. at 5,[3] the messages themselves supply a valid basis from which the jury can infer their import.  For instance, with respect to Victim-1, the tasking contains non-public information that is uniquely available to government officials: Victim-1's 9-digit passport number; Vicitm-1's status as "banned" from departing China; and Victim-1's travel route from China, through an intermediary country, into the United States.  With respect to Victim-2, the defendant urges CC-1 to "ask about" Victim-2's age in order to facilitate the defendant's ability to "find out"—making clear that the tasking did not originate with CC-1 but rather came from another source.  And notably, the recipient of the tasking—the defendant—has close and longstanding relationships with PRC government officials, who trusted the defendant to act on their behalf.  Indeed, other messages recovered from the defendant's phone contain photographs (sent by the defendant) of participants in a Falun Gong rally in New York City, as well as inquiries (sent to the defendant) regarding whether a particular person "practice[s] Falun Gong in the US."  See, e.g., GX 334.

---

[3]     Defense counsel made similarly inflammatory allegations regarding the government's motives during the April 29 pretrial conference.  See April 29, 2026 Transcript at 28 (suggesting that "the Government will, of course, present a witness who will . . . essentially identify not just Changle, but pretty much any Chinese association as just a tool of the CCP or the PRC" and "just arms of . . . the intelligence apparatus of this evil empire across the Pacific").  The government rebuked that accusation, see id. at 29, and the Court gave defense counsel the benefit of the doubt.  Id. at 29-30 (THE COURT: "No, no.  I know. . . .  I don't think he was suggesting you would . . . ").  In light of this pattern, repeated in the defendant's May 1 letter, the government respectfully requests that the Court preclude the defendant from impugning the government's motives before the jury at trial.  Should the defendant continue to do so, the government intends to request a forceful curative instruction.

2

Consistent with the Second Circuit's inclusionary approach to Rule 404(b), this proof is admissible to show, among other things, the defendant's knowledge, motive, and intent in committing the charged crimes, undermining any claim that the defendant's involvement was isolated or unknowing.  And the evidence takes on even greater probative value in light of the defendant's apparent strategy of arguing at trial that "his intent and motives" were merely aimed at "helping" members of the Chinese diaspora.  See ECF No. 93 at 8.  Whatever else the defendant could be seen as doing for Victim-1 and Victim-2, he was certainly not "helping" them.

The defendant is free to argue that taskings related to Victim-1 and Victim-2 were merely "in service of a private grudge," see ECF No. 89 at 7, but the government should similarly be permitted to advocate for a competing inference—namely that, under all of the facts and circumstances, the evidence shows that the defendant was enlisted to act on behalf of the PRC government.  The defendant's motion to exclude this evidence should be denied.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:     /s/                                    
Lindsey R. Oken
Antoinette N. Rangel
Assistant U.S. Attorneys
(718) 254-7000

cc:     Clerk of Court (NRM) (by ECF)
Defense Counsel (by ECF)

3