# THE CARMAN LAW OFFICE

Attorneys at Law

JOHN F. CARMAN, ESQ.

SUSAN SCARING CARMAN, ESQ.

666 Old Country Road
Suite 501
Garden City, New York 11530
(516) 683-3600
Facsimile
(516) 683-8410

OF COUNSEL

MATTHEW W. BRISSENDEN, ESQ.

JONATHAN EDELSTEIN, ESQ.

PARALEGAL

ANNA M. SACCO

July 13, 2026

**VIA ELECTRONIC CASE FILING**
Honorable Nina R. Morrison, U.S.D.J.
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> *Re:   United States v. Lu Jiangwang*
> *Docket No. 1:23-CR-316 (NRM)*

Dear Judge Morrison:

Please accept this letter as defendant Lu Juangwang a/k/a Harry Lu's motion for a new trial pursuant to Fed. R. Crim. Pro. 33. As detailed below, Lu respectfully submits that his trial was fatally tainted by the government's contention in rebuttal summation that he was engaged in "spying" and "intelligence gathering" and that his conduct implicated "national security," despite both the government's agreement and this Court's direct order not to use those terms.[1]

As this Court will recall, defendant Lu moved *in limine* prior to trial to preclude the government from making reference to terms such as espionage or national security, to which the government "clarified that it will not use terms like 'espionage' … but does seek some latitude to broadly describe the statutes under which Mr. Lu is charged… as serving a national security purpose." (4/29/26 Tr. at 86).[2]  This Court, upon further discussion and agreement of the parties, stated that "the Government will have leave to briefly discuss the national security purposes *of the statutes at issue* in its opening," and that if the parties had any further concerns, they were to raise such concerns before summations. (Id. at 87) (emphasis added).

Following the presentation of evidence, and following the initial government and defense summations, AUSA Oken delivered the government's rebuttal summation.  Beginning on page 9 of the attached rebuttal summation transcript, the government launched into an argument ridiculing the

---

[1] Defendant reserves the right to raise additional issues on appeal should an appeal be necessary, and nothing in this motion is or should be construed as a waiver of any such issue.

[2] Transcripts of the April 29, 2026 pretrial conference and of relevant proceedings on May 12, 2026 are annexed hereto.

contention that the charge against Lu was "some kind of silly or technical charge that had nothing to do with national security." (5/12/26 Tr. Excerpt at 9).  Later, the government argued that "even… the most seemingly harmless foreign government operations" can become "over time an operation that locates and surveils people like dissidents who have sought refuge here, who speak out about human rights. And you know that's exactly what was happening here." (Id. at 12). The government further described the purpose of the alleged police station as "to monitor and suppress people who disagree with the Chinese government." (Id.)

From that beginning, the government went on to make repeated references to "spying" and "intelligence gathering:"

> \*      "I suppose the argument goes that just because Officer Liu of the Ministry of Public Security didn't write *this is for spying*, this is for harassment, that means it's not, that means it's just personal? Ladies and gentlemen, that doesn't make any sense. That is not what people put in writing when they're talking about crimes." (Id. at 15);

> \*      "Now, defense counsel has also asked you to believe that just because this trial didn't feel like a James Bond movie… that that means this isn't foreign influence. That just because there are emojis in the WeChat messages, *that means this isn't spying.*" (Id. at 17);

> \*      "This is real life. This is intelligence gathering at work." (Id.)

Thereafter, near the end of the rebuttal summation, the government argued that Lu "took… away" the freedom of Chinese nationals in the United States "when he decided to use [the Changle Association] space to open a satellite office for the Chinese government." (Id. at 23).

Immediately after the summation ended – and even before Lu could register an objection – this Court, *sua sponte*, expressed 'a concern… about AUSA Oken's rebuttal." (Id. at 25). Recalling the conference on the motions in limine, this Court stated that although the parties and the Court had "discussed and clarified at length that the Government was not going to, in any way, argue that this case was about espionage or spying or anything of that nature… I heard Ms. Oken say, much to my surprise," and then read out the three excerpts quoted above. (Id.)  The Court asked AUSA Oken how she reconciled that ruling with her summation. (Id. at 25-26). After AUSA Oken claimed that this wasn't her recollection of the pretrial conference, this Court clarified that "I gave you latitude to discuss national security concerns with it being clear that you would not use terms like espionage," and again gave AUSA Oken an opportunity to explain. (Id. at 26-27).

AUSA Oken first argued that this Court's in limine order referred only to "several specific terms, spying, national security, espionage," but acknowledged that she had in fact used the terms "national security" and "espionage." (Id. at 27). This Court then asked whether AUSA Oken saw a meaningful difference between the term "intelligen[ce] gathering" and espionage, to which AUSA Oken acknowledged that such term "falls within the umbrella of spying." (Id.)  Taking a different

2

tack, AUSA Oken then argued that her rebuttal summation was a proper rejoinder to defendant characterizing the charge against him as "a paperwork offense" and that the charged statute "serves national security purposes that courts characterize as a derivative of the Espionage Act." (Id. at 28). While "apologiz[ing] if we talked past each other at the pretrial conference," she stated that "our intention was… [to rebut] the suggestion that this is about paperwork and nothing more nefarious" and that "[t]his is a statute that does cover spying." (Id. at 29).

This Court, quite properly, responded that the pretrial ruling "couldn't have been more clear," and that spying "literally did not come up in the entire trial until five minutes ago." (Id. at 30). The Court stated that it was concerned that the rebuttal summation "crossed [the] line" and that it didn't "know that the bell can be unrung at this point," and that "[w]e have not charged the jury and I do not intend to charge the jury with anything involving espionage or spying or intelligence gathering or anything of the like." (Id. at 31).

Lu, in response to AUSA Oken's and the Court's statements, noted that he had "opened on the idea that this was a failure to file a form case" and that, if the government believed that opened the door to discussion of spying, there had been ample time for it to raise that concern and seek a ruling from the Court. (Id.)  This Court agreed, stating "all [defense counsel] did was say that [Lu] was not arrested for spying or espionage, but instead, he was arrested for conspiracy to act as a foreign agent and for acting as foreign agent, that he was drawing a distinction between what he was and wasn't charged, with, which was exactly the bounds that we talked about [at the pretrial conference]." (Id. at 31-32).

Defendant then formally moved for a mistrial. (Id. at 32). This Court denied a mistrial "without prejudice to renew in a Rule 29 motion;" however, while expressing some skepticism that "the prejudice is sufficient to warrant the extreme sanction of a mistrial," it stated, "I will certainly not rule as to whether there was a violation or whether there was prejudice at this time." (Id.)

Colloquy followed regarding a curative instruction, which defendant engaged in subject to his mistrial motion.  The jury was then sent to deliberate, and after deliberations, it convicted Lu on Count Two (acting as an unregistered foreign agent) and Count Three (obstruction of justice) while acquitting him on Count One (conspiracy to act as an unregistered foreign agent).

Lu now renews his motion for a mistrial under Fed. R. Crim. Pro. 33(a)(2).

As a threshold matter, Lu submits that this Court's review of this motion is plenary, because while it denied the mistrial motion when it was originally made, it not only did so without prejudice but explicitly declined to rule on "whether there was a violation [of the pretrial conference order] or whether there was prejudice [sufficient for a mistrial] at this time." As such, this Court is now being called upon to rule on those issues for the first time – not to determine whether there has been an error of law or abuse of discretion, but to *follow* the law and *exercise* its discretion in the first instance. See, e.g., United States v. Dines, 2023 WL 2584910, at *2 (M.D. Fla. 2023) (deciding mistrial motion under plenary standard where it had reserved decision and permitted the defendant to submit supplemental briefing after the verdict); United States v. Rodriguez-Pomales, 500 F. Supp. 2d 51, 53-55 (D.P.R. 2007) (doing likewise where court had denied a mistrial motion without prejudice from the bench and granted leave to renew after the verdict).

3

Alternatively, Fed. R. Crim. Pro. 33(a) states that "upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Rule 33 "confers broad discretion upon a trial court to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." United States v. Polouizzi, 564 F.3d 142, 159 (2d Cir. 2009). This Court's broad discretion empowers it to grant relief based not only on the sufficiency or weight of the evidence at trial but on any other circumstance that might render the trial "essential[ly] unfair[]," including trial errors. See United States v. Muyet, 994 F. Supp. 501, 520 (S.D.N.Y. 1998), citing United States ex rel. Darcy v. Handy, 351 U.S. 454, 462 (1956). "Where Rule 33 relief is sought based on trial errors, the standard of review before this Court is the same as on appeal." United States v. D'Amelio, 636 F. Supp. 2d 234, 238 (S.D.N.Y. 2009), rev'd on other grounds, 633 F.3d 412 (2d Cir. 2012), citing United States v. Zagari, 111 F.3d 307, 319-20 (2d Cir. 1997). Thus, if this Court declines to use a plenary standard, Lu is nevertheless entitled to relief if the government's rebuttal summation constituted misconduct that would be reversible on appeal. Id.

Under either standard, defendant is entitled to a new trial. "Courts have the power to declare a mistrial whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated." United States v. Van Hise, 2014 WL 956291, at *4 (S.D.N.Y. 2014), quoting United States v. Klein, 582 F.2d 186, 190 (2d Cir. 1978). While the Second Circuit has cautioned that the power to declare a mistrial should be exercised with circumspection and "for very plain and obvious causes," courts may use it "in the exercise of sound discretion" and where the defendant has suffered prejudice. See United States v. Gaskin, 364 F.3d 438, 463 (2d Cir. 2004).

Courts have measured prejudice, for mistrial purposes, by whether "there is a reasonable probability that but for the alleged error, the outcome of the trial would have been different." United States v. Gryzbowicz, 747 F.3d 1296, 1311 (11th Cir. 2014). Reasonable probability is a familiar standard which is also applied in the Brady and ineffective assistance contexts. It has been described as "a fairly low threshold." Riggs v. Fairman, 399 F.3d 1179, 1183 (9th Cir. 2005), citing Sanders v. Ratelle, 21 F.3d 1446, 1461 (9th Cir.1994), held that a reasonable probability "may be less than fifty percent." Ouber v. Guarino, 293 F.3d 19, 26 (1st Cir. 2002); United States v. Bowie, 198 F.3d 905, 908-09 (D.C. Cir. 1999) (same); United States v. Vargas, 709 F. Supp. 2d 48, 50 (D.D.C. 2010) (same); United States v. Nelson, 921 F. Supp. 105, 120 (E.D.N.Y. 1996) (finding that 33 percent chance amounted to a reasonable probability). In fact, it has been held that a reasonable probability exists whenever the chances of a different outcome are "better than negligible," United States ex. rel. Hampton v. Leibach, 347 F.3d 219, 246 (7th Cir. 2003), or put another way, if they are "more than mere speculation." United States v. Berryman, 322 Fed. Appx. 216, 222 (3d Cir. 2009).

In this case, there is plainly a "better than negligible," "more than… speculat[ive]" probability that the government's rebuttal summation affected the outcome of the case. To begin with, the government clearly did violate the order this Court issued at the pretrial conference. As discussed above, the Court strictly limited the government to discussing the national security purposes *of the charged statute* in its *opening statement*, and cautioned the government that if it believed that Lu opened the door to anything more, it was to raise that concern and seek relief before summations. At no point did the Court authorize the government to use the terms "spying"

4

or "intelligence gathering" for any purpose whatsoever, nor did it authorize the government *to describe Lu's conduct* as damaging to national security as opposed to discussing the purpose of the statute under which he was charged. But rather than doing as the Court admonished, the government took upon itself to describe Lu as a spy and an intelligence agent and to argue that the offense conduct, rather than only the statute, was a national security matter.

Nor was this argument acceptable rejoinder to either the defense opening or the defense summation. As the Court correctly pointed out, the defendant's argument in his opening statement was that the elements of the charged offense involved failure to fill out a form and that he was not charged with espionage – an argument that the Court cogently described as following the exact parameters of the discussion at the pretrial conference. Neither this argument nor the equivalent argument in summation opened the door for the government to call him a Chinese spy. And this is especially true given that the government successfully argued, at the same pretrial conference, that even the most innocuous personal favors done at the direction and control of a foreign official required registration, and given that the jury was instructed that the acts done at the direction and control of a foreign official need not be independently illegal. Where the government itself proceeds on the theory that foreign agent registration is a paperwork procedure that must be followed regardless of whether the agent's act involves spying, national security, or intelligence gathering, it cannot claim that the defendant has opened the door to introducing spying in the case simply by pointing this out.

Rebuttal is not a blank check – a prosecutor exceeds the bounds of rebuttal summation when it impermissibly raises new arguments, see United States v. Taylor, 728 F.2d 930, 937 (7th Cir. 1984), and new arguments are impermissible where, *inter alia*, the defense summation does not open the door to them, see United States v. Gray, 876. F.3d 1411, 1413 (9th Cir. 1989). The door was not opened here, and the government's references to spying, intelligence gathering, and national security on rebuttal were improper.

The rebuttal summation was also highly damaging to Lu in a number of ways. Because the government had explicitly agreed at the pretrial conference not to use the terms at issue, defendant had no reason to request that these terms be discussed with prospective jurors during voir dire and to determine whether they might affect the jury panel's ability to be impartial. Moreover, to accuse a defendant of spying, or of impairing the national security of the United States, is a highly inflammatory thing to do, especially where the country for which the defendant has allegedly spied is the People's Republic of China. This Court need not close its eyes to the fact that relations between China and the United States have become tense, that many elected officials, including the current Republican candidate for Governor of New York, have portrayed China as an enemy country.[3] The government, in other words, invited the jury to view Harry Lu personally as an enemy of the United States of America, not once but repeatedly – and those were the last words the jury heard from either party before being charged and sent in to deliberate.

---

[3] For an example occurring only a few months before the trial of this case, see Carl Campanile, Blakeman hits Hochul for chummy relations with Chinese Communist officials after Linda Sun scandal, N.Y. Post, Jan. 7, 2026 (available online, https://nypost.com/2026/01/07/us-news/blakeman-hits-hochul-for-dealing-with-chinese-communist-officials-after-linda-sun-scandal/).

This was not an open-and-shut case by any means.  This Court presided over the trial, and it is thus not necessary to remind the Court of the substantial evidence that rather than being "tasked" or "controlled" by the Chinese Ministry of Public Security, Lu was, in the words of the Fourth Circuit, "act[ing] in parallel with a foreign government's interests or pursue a mutual goal," which is insufficient to make out an offense even if the defendant is "willing to do something the foreign principal requests." See United States v. Rafiekian, 991 F.3d 529, 538 (4th Cir. 2021).  While the government, in its summation, ridiculed the distinction between "asking" and "tasking," that is in fact the distinction that Rafiekian draws, and on this record, a jury could easily have found that Lu's occasional responses to requests were nothing more than "parallel" conduct toward "mutual goals" rather than establishing a relationship akin to common-law agency, see id.  This case presents, in other words, precisely the kind of record where inflammatory accusations of spying and national security violation during the rebuttal summation can push the jury over the line.

The government will no doubt contend that any prejudice was alleviated by the instructions issued to the jury and that the jury's acquittal of Lu on Count One proves that it was able to consider the evidence fairly and dispassionately.  As to the first of these, it suffices to repeat the memorable words of the Fifth Circuit: "[i]f you throw a skunk in the jury box, you can't instruct the jury not to smell it." Dunn v. United States, 307 F.2d 883, 886 (5th Cir. 1962). And as to the second, federal law does not recognize unilateral conspiracy, see United States v. Rosenblatt, 554 F.2d 36, 38 (2d Cir. 1977), so the jury's acquittal of Lu on Count One might simply have been based on the conclusion that Lu's alleged co-conspirators – who the government did not describe as spies – lacked criminal purpose, and that only Lu, branded as an intelligence gatherer and a spy who impaired national security, was pursuing an unlawful objective.

Defendant thus submits that this is indeed a case in which the prejudice from the government's flagrant violation of this Court's orders in its rebuttal summation rises to the level that necessitates a mistrial – that they "so infected the trial with unfairness as to make the resulting conviction a denial of due process," see Darden v. Wainwright, 477 U.S. 168, 180 (1986). This Court should therefore grant defendant a new trial on all counts of which he was convicted.

The Court's consideration in this matter is appreciated.

Respectfully submitted,

/s/ John F. Carman

JOHN F. CARMAN
(JC 7149)

Cc: All Counsel (Via Email and ECF)

6